## NEW YORK COMMON PLEAS.

### Hugh Smith and John Kerr agt. The New York Consolidated Stage Co., Augustus Schell, and others.

A *receiver* appointed by the court in an action, can apply to the court *ex parte* for instructions respecting the management of the estate confided to his care; but the better course is to give notice to those interested in the estate.

On such an application there seems to be no valid objection that the *attorney* for the plaintiffs in the action, appears as attorney and counsel for the *receiver* having charge of the defendant's estate. It is only when the receiver is acting *adversely* to one of the parties, that it has ever been supposed there was any impropriety in employing the counsel of the other.

It is no objection to the court giving instructions to the receiver, that another action is pending in *another court,* wherein the same receiver is appointed, if the appointment in the latter court is in fact *subsequent* to the appointment in the former court; and especially where the action in the latter is considered merely a colorable proceeding.

The right of the court to authorize a receiver to continue the business of the estate and property with which he is intrusted, is indubitable. But where it appears upon the application of the receiver for instructions, that the moneys arising from the prosecution of the business are insufficient to defray the current expenses, and that there are no other means to do so, the receiver will be directed to sell, and the court can vest him with discretionary power to sell all or any part of the property as he may think best, and either at public or private sale, as he deems most advisable; but all sales to be made on condition of being subject to the approval of the court.

*Special Term, February,* 1865.

Application by a receiver for instructions in regard to the management of the estate intrusted to him.

CARDOZO, J.    This is a very simple matter.    The application is the ordinary one of a receiver appointed by the court, petitioning for instructions respecting the management of the estate confided to his care.    It might have been made and granted *ex parte*, although of course the wiser plan was to give notice (and undoubtedly the court would ordinarily require that to be done) to those interested in the estate.    Whether, however, objections which may be termed of a technical character, should be entertained, may be a question, but it will not be necessary to consider it.    Nor will it be requisite to examine whether, in any case, there would be any, and if so, what force in the objection raised that the attorney for the plaintiffs in the suit appears as attorney and counsel for the receiver. Whether any general practice ever existed, prohibiting such an appearance, or if there did, whether it ought not to be deemed obsolete, since it is certain that for very many years it has been disregarded almost daily, and thus seems to have met with the condemnation of the profession —and who could avail themselves of the objection, if it be one—are also questions which need not be determined, because it never was pretended that the rule applied to a proceeding like the present.    It was only when the receiver was acting adversely to one of the parties, that it has ever been supposed there was any impropriety in employing the counsel of the other.    That is not the case here.

It was also urged that this court should not give any directions to the receiver, but should leave it to the supreme court to instruct him.    If it were necessary, I think I should have very little difficulty in reaching the conclusion that the suit of Siney against these defendants in the supreme court, in which Mr. Murphy has also been appointed receiver, was a colorable proceeding, not taken with a view to obtain the relief demanded, but with the design to enable the defendants to escape the consequences of a decision which had been announced in this case.    Indeed, Mr. Siney

almost tells us so in his affidavit. But there is really no ground for this objection of the defendants. The order appointing Mr. Murphy receiver in the suit in this court, was properly made to relate back to the time when the decision that a receiver should be appointed was announced, and is prior to the appointment made by the supreme court (*see Deming* agt. *N. Y. Marble Co.* 12 *Abb. Pr. Rep. p.* 66). The case then presented for my consideration is simply this: The receiver, who by the order was to take possession and hold the assigned property, and the proceeds arising from conducting the business of the company, finds that the business is so unprofitable that it will not yield enough to bear its current expenses, and that the receivership has no other means to defray those expenses, and that the property which he was directed to hold is subject to liens to a large amount, which are becoming urgent. The receiver took the property subject to whatever liens were upon it, and those liens should be paid. (*In re North American Gutta Percha Co.* 17 *How. Pr. Rep. p.* 553; *and* 9 *Abb. Pr. Rep. p.* 70; *Rich* agt. *Loutrel*, 9 *Abb. Pr. Rep. p.* 356.)

The petition shows that except by sale, the receiver cannot discharge the liens; that he has no means of the company either for that purpose or to continue its business. One of the counsel for the defendants complained of the receiver for carrying on the business; denied that the receiver had been authorized to do so, and more than hinted a doubt whether the court had the power to confer such an authority. This complaint sounds singular when it proceeds from the counsel of those who attempted to transfer the property of the company to an assignee, and when that assignee had conducted the business for a considerable time. The right of the court to authorize the receiver to continue the business, is however, indubitable, and the cases are numerous in which the power has been exercised both by the late court of chancery and by the tribunals possessing

equity jurisdiction, since the abolition of that court. (*See Marten* agt. *Van Schaick,* 4 *Paige,* 479 ; *Crane* agt. *Ford, Hopk.* 114 ; *Jackson* agt. *De Forest,* 14 *How. Pr. Rep.* 81 ; *Dayton* agt. *Wilkes,* 17 *How. Pr. Rep.* 510 ; *Clark* agt. *Brooks, decided by Judge* BRADY *in this court.*)

I shall not stop to inquire whether the receiver has been so authorized in this case, because if he has been, it is clear on the papers before me that the concern cannot, and if he has not been, ought not to be kept going by him. It cannot be because there is a lack of means, and it ought not to be because it is apparent that it is a losing business.

It appears among other things, and is uncontradicted, that the moneys arising from the prosecution of the business are insufficient to defray the current expenses, and that there are no other means of the company to do so ; that the United States authorities threaten to distrain for non-payment of revenue tax, and that the landlord of the stables threatens to dispossess for back rent. It is very easy to say, as was suggested on the argument, let the receiver get another stable, or make terms to hire the same premises from the date of his appointment. Even if these things were practicable, only one difficulty would be removed, and moreover, it does not appear how the receiver is to pay the rent either of other or the same premises from the date of his appointment, or any other time. But the landlord of the present premises may decline renting, and it may not be, probably is not, and at all events, without proof, it ought not to be assumed that it is always feasible to obtain premises suitable for stabling so many horses and vehicles. Even if it were proper for the receiver, or for the court to permit him to do so, to endeavor to hire the present stables without the means or the prospect of means to pay the rent, it is not too much to assume that the landlord, under the ·circumstances disclosed in this petition, would decline to let them. Whether the landlord can or not avail himself of the statutory remedy of sum-

Smith agt. New York Consolidated Stage Co.

mary proceedings as against the receiver, it would be monstrous to say to him "you shall, whether willing or not, make terms with the receiver to allow him to remain in possession of your property, though the rent is largely in arrear, and there is not the slighest possibility that he will be able to realize enough from the business to pay you."

None of the allegations of the receiver were denied, and I must frankly say, from what has transpired before me on the various motions in this case, I do not see how they could be. But it was suggested that possibly the company would pay the demands. It was not suggested that possibly the company would furnish the money to continue running the line, but had it been, the answers would be the same as to the suggestion just previously mentioned. If any of the stockholders designed to furnish the means either to run the line or to discharge pressing liabilities, it would have been very easy to have said so, and not leave it to be intimated by way of argument. That they have not done so is very strong proof that they did not and do not intend to do any such thing. The suggestion that possibly the company might furnish the means requires but a single remark. The assignment by the company to Mr. Schell, purported to convey everything it had, and all that was attempted to be assigned has been ordered to be transferred to the receiver. After having parted with everything, it is difficult to imagine where the company will find the means to carry out the suggestions of the counsel. The receiver finding things in this plight, asks the court what he shall do. The answer is inevitable, "you must sell." One of the counsel for the defendants, while not objecting to a sale, argued that I should order a reference to ascertain what should be sold.

I do not see that anything except to create additional charges on the fund, is to be attained by that course. How much the property will produce, and, therefore, supposing that it were unnecessary to sell all, how much would have

to be sold to pay liens, and whether the property would realize more if sold together than if sold in parcels, and the most discreet method of making the sale, must all necessarily be matters of opinion and speculation, on which judgments would be as diverse as there were witnesses examined. I think it quite as well to trust the judgment of the present receiver as that of a referee, and that, therefore, the wiser course is to vest, as I shall, a discretionary power in the receiver to sell all or any part of the property as he thinks best, and either at public or private sale as he deems most advisable, but all the sales must be made on condition of being subject to the approval of the court, and the receiver will make no disposition of the proceeds, except upon application to the court. This, it seems to me, will protect everybody.